UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE 11 | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Cause No. 1:17-cv-00811 |
| vs. | § | JURY TRIAL DEMANDED |
| | § | |
| BAYLOR UNIVERSITY | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT
AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

This case arises from Defendant's deliberately indifferent response to multiple events of student-on-student sexual assault and culture of sex-based harassment that exists both before and after the sexual assault. Investigation and media reports indicate these important cases are but a handful of many in what has been a historic and extensive history of abuse and conscious disregard by Defendant. Defendant's very policies and selective conduct code enforcement resulted in a discriminatory environment for female students. What is more, Defendant's failure to promptly and appropriately investigate and respond to student sexual assaults allowed a condition to be created that substantially increased Plaintiff's chances of being sexually assaulted, as well as others. Moreover, Defendant's failure to promptly and appropriately investigate and respond to these assaults furthered sexual harassment and a hostile environment, effectively denying Plaintiff, and other female students, access to educational opportunities. This action alleges violations of Title IX and, thereunder, Clery Act violations. This action alleges additional pendent claims arising under state law,

including breach of contract and negligence.  In support thereof, Plaintiff would show the Court as follows:

## I.

## PARTIES

1.      Plaintiff Jane Doe 11[1] is a cisgender female.  At all material times Jane Doe 11 was living in the County of McLennan, State of Texas.  At the time of events complained of herein, Jane Doe 11 was a student attending Baylor University.

2.      Defendant, Baylor University, is an educational institution in the County of McLennan, State of Texas.  Baylor University may be served through its President, Linda Livingstone at Pat Neff Hall, Suite 100, Waco, Texas 76798.  During all material times, Baylor University received federal funding for its academic programs and activities.

## II.

## JURISDICTION AND VENUE

---

[1] "Jane Doe" has been substituted for Plaintiff's name for all causes of action brought through this Complaint which would otherwise publish important privacy interests of all parties.  Plaintiff fears for her personal safety, as well as that of their family and friends as a result of this Complaint.  On information and belief, others who have made similar charges against at this University and who have made their names publicly known in connection with these same allegations have received physical threats, have been stalked including being assaulted while on campus and/or have been subject to an internet social media harassment.  Fairly applying this concern, the Complaint also identifies the perpetrator as Assailant 12.  Finally, the Complaint does not use the Plaintiff's administrators' names but identifies them as "Administrator" or by their titles as opposed to naming the staff of Defendant University and the members of its Board of Regents as Defendants.

3.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

4.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights. Various actions and/or inactions by Baylor employed law enforcement amount to action under the color of law and therefore jurisdiction and claim is asserted under this statute.

5.    Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.  This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the Fourth Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution.

6.    Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law including breach of contract and negligence.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all Parties reside

or resided in this district and the events giving rise to the claims occurred in this district.

### III.

### APPLICABLE LAW

8.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 168l(a), states

that:

> "No person in the United States shall, on the basis of sex, be excluded from
> participation in, be denied the benefit of, or be subjected to discrimination
> under any education program or activity receiving Federal financial assistance
> ...."

9.    Title IX is implemented through the Code of Federal Regulations. See 34

C.F.R. Part 106. 19. 34 C.F.R. § 106.8(b) which provides:

> " ... A recipient shall adopt and publish grievance procedures providing for
> prompt and equitable resolution of student and employee complaints alleging
> any action which would be prohibited by this part."

10.    In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United

States Supreme Court recognized that a recipient of federal educational funds intentionally

violates Title IX, and is subject to a private damages action, where the recipient is

"deliberately indifferent" to known acts of teacher-student discrimination.

11.    In *Davis v. Monroe County Board. of Education*, 526 U.S. 629 (1999), the United States

Supreme Court extended the private damages action recognized in *Gebser* to cases where the

harasser is a student, rather than a teacher.

12.    *Davis* held that a complainant may prevail in a private Title IX damages action against

a school district in cases of student-on-student harassment where the funding recipient is:

a) "deliberately indifferent to sexual harassment of which the recipient has actual knowledge," and

b) "the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."

*Davis*, 526 U.S. at 1669-76.

13.    Title IX jurisprudence as well as Department of Education regulations have long recognized that a single event of rape constitutes harassment so severe, pervasive and objectively offensive that it deprives its victims of access to the educational opportunities provided by the school:

> "The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the harassment is physical. Indeed, a single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe. For instance, a single instance of rape is sufficiently severe to create a hostile environment."

U.S. Department of Education, Office of Civil Rights, "Dear Colleague" Letter of April 4, 2011.

14.    Regardless, in the circumstances giving rise to the claims of Plaintiff, and others, a significant history student of female student harassment, resulting from deliberate indifference, if not intent, has been allowed to continue at the Defendant University for many years.

15.    Texas law provides protections for students and requires the exercise of reasonable care on the part of the University.

16.    Texas law provides for the protection of invitees from foreseeable criminal harm.

17.    Texas law also provides for a cause of action of breach of contract. Plaintiff has and continues to have an educational contract with the Defendant University that included agreements and duties to provide adequately for her safety, to adequately and in compliance

with law report instance of sexual assault and/or harassment the breach of which cause the damages claimed herein.

**IV.**

**FACTS**

18.     For months now, the Defendant University has been the subject of numerous media reports concerning rampant sexual assault on campus, often perpetrated by athletes, including players on the football team.

19.     The Waco Tribune has reported a timeline of this unfortunate saga which, upon information and belief, sets forth important and relevant events. *See* http://www.wacotrib.com/news/higher_education/timeline-baylor-sexual-assault-controversy/article_abf21ab8-2267-51bf-84d8-6268f4222af0.html (accessed August 16, 2017).

20.     Suffice it to say that the Defendant, its staff, and highest officers have permitted a campus condition rife with sexual assault and completely lacking the basic standards of support for victims as required by federal and state law.

21.     Information discovered to date also reveals that the University has maintained a set of policies, procedures and customs, not the least of which involve the student code of conduct, that itself, without a sexual assault, created a sexually discriminatory education environment.

22.     At all material times, the Defendant University was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq.* for its activities including financial aid and research grants among other sources.

23.     The Defendant University implemented and executed policies and customs in regard to the events that resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights.

24.     The Defendant University is responsible for providing the security of its students and guests which it does through "Public Safety," in effect a private police force.

25.     The Defendant University is responsible for ensuring that all of its employees are properly trained and supervised to perform their jobs.

26.     The Defendant University is responsible for the acts and omissions of its employees, agents, part-time student workers and tenants.

27.     The Defendant University received reports from Plaintiff concerning the event of sexual abuse and the sexual harassment she experienced while at an academic activity at the Defendant University.

28.     The Defendant University failed to adequately investigate the events Plaintiff reported in violation of Title IX.

29.     The Defendant University failed to investigate the assault the Plaintiff endured of which Defendant had either actual or constructive notice at the time they happened.

30.     Upon information and belief, the Defendant University failed to report the criminal act involved in the report it received from the Plaintiff in violation of its obligations under the Clery Act.

31.      The Defendant University failed to report the criminal acts involving sexual assault reports involving other victims that it received in violation of its obligations under the Clery Act.

32.    Incredibly, the Defendant reported to the Department of Education zero (0) incidents of sexual assault from 2008-2011. *See* http://www.usnews.com/news/us/articles/2016-02-18/critics-challenge-baylor-claim-of-no-sex-offenses-in-4-years (accessed August 16, 2017)

33.    The Defendant University failed to provide a safe academic environment for Plaintiff; faced with the Plaintiff's and other student reports of rape, the Defendant University's response, and its officials' conduct, was such that future reasonable students in Plaintiff circumstance would be, and in fact were, chilled from reporting sexual harassment.

34.    The Defendant University employees, including high ranking officials, conspired amongst themselves, and with other University employees, with the common purpose of violating the Clery Act in relation to the reports of sexual assault that Plaintiff provided them within a timely manner.   Such actions deprived prospective students of meaningful information concerning conditions on campus.

35.    The extensive detail of the Plaintiff's report of sexual assault, as well as the numerous reports of others, to these administrators, all of whom were high-level, policy-setting employees of Defendant, did not cause any change in the sexually hostile environment at the University as is averred throughout this Complaint.

36.    The Defendant University employees, including high ranking officials, conspired amongst themselves, and with other University employees, with the common purpose of violating Plaintiff's rights under Title IX and the Clery Act including, but not limited to, violating her right to be informed that she could and should report the sexual assault allegations to the police and Defendant's duty to report the offense.

37.     The Defendant University employees took several overt acts in furtherance of their common goal, including misleading Plaintiff, concealing meaningful facts from Plaintiff, lying to Plaintiff, misrepresenting their actions to Plaintiff, failing to prosecute, investigate and report Plaintiff's claims, as well as the related crimes and generally failing to provide Plaintiff with a safe academic environment free from sexual harassment.

38.     At all times relevant to this Complaint, Defendant failed to protect Plaintiff, and others, as it negligently discharged its duty to provide safety to the students and guests of the University.

39.     What is more, the Defendant University, despite direction from the Department of Education and its legal requirements, did not have a Title IX coordinator until November, 2014.

40.     As a direct and proximate result of the harassing educational environment created by Defendant's deliberately indifferent response to the sexual assault and subsequent harassment of Plaintiff, as well as violations of their state and federal legal rights, Plaintiff has suffered and continues to suffer untold psychological damage, profound emotional distress, permanent loss of standing in her community and damage to her reputation, and Plaintiff's future relationships have been negatively affected.

41.     Plaintiff has also been deprived of meaningful treatment, including medical and psychological support, as a result of Defendant's conduct and the resulting medical environment which they caused.

42.     Plaintiff has also been deprived of a normal college education due to Defendant's conduct and the resulting educational environment which they caused.

43.    Plaintiff has also been damaged by missed educational opportunities. Also, her future earning capabilities have been damaged by Defendant's conduct and the resulting hostile educational environment which they caused.

44.    Jane Doe 11 enrolled at the University in 2014 as a Sophomore, having received significant dual credit in high school.

45.    At the University, Jane Doe 11 received both need-based and academic-based scholarships and excelled on a track to earn double majors in the business school.

46.    Also while at the University, Jane Doe 11 became a member of a prominent student organization, chosen to represent the University among fellow students, prospective students, and alumni.

47.    In that role, Jane Doe 11 was instructed by the University to present herself as being a student with only safe experiences during her time at the University, and indeed, Jane Doe 11 was led to believe this to be true and that the University would provide her and her fellow students with a safe, protective environment.

48.    While enrolled, Jane Doe 11 was told that the University was making implementation of recommendations to address prior University failures in addressing sexual assault and that the implementation of those recommendations had been accomplished.

49.    Indeed, in May 2017, the University heavily publicized having implemented the 105 recommendations reportedly given the University by the Pepper Hamilton Law Firm.

50.    During this time, the University's Acting President was appearing before the Legislature and various media outlets proclaiming the University had fully implemented reforms and therefore had cured its admitted past misconduct toward female students.

51.     In April 2017, Jane Doe 11 was sexually assaulted by Assailant 12 who was also a student at the University.

52.     After the assault, Jane Doe 11 went to the local hospital and a SANE exam was completed.

53.     Waco Police Department came to the hospital and notified Baylor Police Department, who in turn notified the University's Title IX office.

54.     Jane Doe 11's experience with the University Title IX personnel directly contradicted any assurance that meaningful change had occurred within the Title IX office despite the University's repeated boasting of full implementation of the recommendations.

55.     Jane Doe 11's interactions and interview with Title IX devolved into insinuations and questions geared at blaming Jane Doe 11 for the assault.

56.     For example, the University personnel asked what type of clothes she was wearing and how easy they were to be removed.

57.     They interrogated her on alcohol use and what she had eaten.

58.     The manner and method of questioning made Jane Doe 11 feel as if she had to answer questions a certain way or else suffer continued questioning.

59.     When Jane Doe 11 maintained that the assault was not consensual, the University attempted to have her say that Assailant 12 may have nevertheless believed that he had consent.

60.     Assailant 12, who Jane Doe 11 had only met the night of the assault, told Baylor categorically that aside from kissing, "there was just no sexual activity done at all".

61.    On the other hand, Baylor determined that Jane Doe had maintained consistent claims to multiple witnesses, Waco PD, Baylor PD and Baylor investigators, and Baylor also determined that Jane Doe 11 had no discernable motive to falsely report the assault.

62.    Jane Doe 11 reported that throughout the several hours during the course of the evening, she consumed two beers and one mixed drink, but not enough that she'd ever experienced severe adverse effects or incapacitation.

63.    Nevertheless, Jane Doe 11 experienced unexpected and unexplained dizziness and blurry vision and ultimately went in and out of consciousness, during which time the assault occurred.

64.    Ultimately, Baylor found that Assailant 12 was lying and not credible and that sexual activity did in fact occurred.

65.    Although Baylor acknowledged that Jane Doe 11 woke up with blood on her clothes , Baylor found that force was not used by Assailant 12 in committing the sex act that he had altogether denied.

66.    Baylor acknowledged that Assailant 12 admitted texting a witness involved asking if she would be interested in having a threesome with him.

67.    Baylor acknowledged that after learning of the allegations and leaving the Title IX office, Assailant 12 texted Jane Doe 11 without denying the allegations, but rather asking for "compassion".

68.    Despite acknowledging that Jane Doe 11 was in and out of consciousness during the assault, Baylor found that "a sober reasonable person" would not have believed Jane Doe 11 was incapable of consenting due to incapacitation.

69.    Ultimately, Jane Doe 11 was told by Baylor they had found Assailant 12 not responsible for the assault, and found that the same sexual activity that Assailant 12 totally denied engaging in was nevertheless consensual.

70.    Baylor made its finding without having the SANE exam results which Jane Doe 11 had submitted to at the hospital.

71.    When Jane Doe 11 attempted to appeal the Title IX finding, the Title IX office refused to answer questions until immediately before the deadline for the appeal and then refused to extend the deadline.

72.    In the course of dealing with the Title IX office, Jane Doe 11 was misinformed as to her options including the option of having a No Contact Order in place, and misinformed as to what a No Contact order meant or what its impact would be.

73.    Jane Doe 11 was also misinformed by the University Police about the purposes, effects, and enforceability of No Contact and Protective Orders.

74.    At one point, Jane Doe 11 was informed that a Protective Order was just a piece of paper and that the University Police could do nothing to enforce such an Order.

75.    Despite her stated concerns, the University Police exhibited no concern about Assailant 12 continuing to contact Jane Doe 11, and Jane Doe 11 was offered no assistance or information by other parts of the University in her issues and concerns with continuing to see Assailant 12 on campus.

76.    Jane Doe 11 requested assistance from the Title IX office that would allow her to go to and from class without having to see her assailant, a request that has been denied to date.

77.    Baylor's chaplain did assist Jane Doe 11 in talking to an advocate who made it possible for her to receive incompletes in courses she began struggling in, however she was not advised about the adverse impact that the incompletes would have on her transcripts, nor how those incompletes would adversely impact her financial aid.

78.    As a result of the misinformation and omissions of information regarding Jane Doe 11's incompletes, Jane Doe 11 is currently required to take 18 hours plus finish other course work at an accelerated rate, or suffer loss of her financial aid.

79.    Title IX refused to assist Jane Doe 11 with her financial aid issues and after Jane Doe 11 contacted the Office of Civil Rights and questioned them on how Title IX was handling her complaint, all she received was generic emails suggesting she contact the Title IX coordinator.

80.    Having been wholly failed by the University, even after assurances that 105 recommendations had been implemented, Jane Doe 11 was left with this action as her only means of seeking redress.

81.    Jane Doe 11 was told via email that several implementations and recommendations regarding the University's failures on the part of addressing sexual assaults were in place.

82.    Yet, Jane Doe 11 was not informed that the recently replaced Interim University President, David Garland had given testimony that clearly demonstrated a concerted, deliberate and effective implementation of the so-called Pepper Hamilton 105 recommendations had not occurred.  Nor was Jane Doe 11 informed that Garland, the man purportedly in charge of implementation of the recommendation did not even know the

specific purpose of the recommendations, nor know the specific problems which the recommendations were purportedly designed to address.

83.    Last Fall, Baylor's Title IX coordinator resigned and made public statements that support Jane Doe 11's experience that meaningful reform has not yet set in.

84.    Jane Doe 11's experience, which post-dates Baylor's media tour patting itself on the back for "complete" and "full" implementation of Pepper Hamilton's 105 recommendations, further reveals that the sexually discriminatory education environment and multiple failures, all of which the Baylor Board of Regents acknowledged in their adopted Findings of Fact, persists.

## V.

## CAUSES OF ACTION

### COUNT 1:

### VIOLATION OF TITLE IX

### 20 U.S.C. § 1681, *et seq.*

85.    The sex-based harassment articulated in this complaint was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the school.

86.    The Defendant created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because:

    a) Plaintiff was a member of a protected class;
    b) Plaintiff was subjected to sexual harassment in the form of a sexual assault
       by another student;

c) Plaintiff was subjected to harassment based on her sex;

d) Plaintiff was subjected to policies, procedures and customs, not the least of which involved honor code enforcement, that were implemented in a sexually discriminatory manner; and

e) Plaintiff was subjected to a hostile educational environment created by the Defendant's lack of policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

87.    Defendant and its officials had actual knowledge of the sexual assault and the resulting harassment of Plaintiff created by its failure to investigate and discipline Plaintiff's attacker in a timely manner and consistent with federal and state law.

88.    The Defendant's failure to promptly and appropriately respond to the alleged sexual harassment resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the Defendant's education program in violation of Title IX.

89.    Defendant failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment, and instead acted with deliberate indifference towards Plaintiff.

90.    Defendant persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

91.    Defendant engaged in a pattern and practice of behavior designed to discourage and dissuade students and guest students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

92.    This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

93.    Plaintiff has suffered emotional distress and psychological damage, and her character

and standing in the community has suffered from the harassment fostered as a direct and

proximate result of Defendant's deliberate indifference to her rights under Title IX.

94.    Each of the actions and inactions listed in Count 2 below are also incorporated herein

under this claim.

## Count 2:

## TEXAS TORT LAW – Negligence

95.    Defendant owed Plaintiff a duty of reasonable care.

96.    Defendant breached these duties in multiple ways including:

    a.    Failing to proper hire, train and retain officers, staff and faculty as to proper methods to deal with reports of sexual abuse, investigate same and accommodate victims in a manner that would permit them to without undue hindrance, complete their higher education;

    b.    Failing to properly and timely report incidents of claims sexual assault;

    c.    Failing to provide adequate counseling and assistance to victims of sexual assault;

    d.    Failing to adequately monitor and supervise departments, including athletic departments, to ensure compliance with protections and standards for sexual assault prevention, reporting and investigation;

    e.    Failing to discover, develop and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault;

    f.    Failing to investigate and/or monitor persons accused of sexual assault to ensure additional events did not occur;

    g.    Failing to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus;

    h.    Failing to provide adequate staff, with proper training, to counsel and assist victims of sexual assault;

    i.    Tolerating sexual assailants on campus despite reports to the highest levels of their identities;

    j.    Failing to adopt education programs to promote awareness of rape, acquaintance rape, and other sex crimes;

    k.    Failing to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible;

l.   Failing to adopt and enforce procedures students should follow if they become sexual assault victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported;

m.   Failing to inform victims that they have the option of reporting the sexual assault to law enforcement authorities and that they will receive assistance from the institution in the process;

n.   Failing to notify sexual assault victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault;

o.   Failing to put in place an accurate routine procedure to notify the campus community about serious criminal activity that is likely to be a threat to students and employees;

p.   Failing to adopt and periodically review procedures to make sure they are adequate to address complaints of serious sexual misconduct.

q.   Failing to develop a clear policy about which kinds of sexual offenses will be handled internally and which will be turned over to the criminal authorities;

r.   Failing to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission of providing a safe and secure learning and working environment;

s.   Failing to provide for meaningful assistance and accommodation for assault victims;

t.   Failing to ensure that student conduct regulations were enforced in a non-sexually discriminatory manner.

97.   The above enumerated breaches of duties were the proximate cause of substantial injury and damage to Plaintiff, as more specifically described herein.

98.   These damages include, great pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; Plaintiff has suffered and continues to suffer spiritually. Plaintiff was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and

will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT 3:

### TEXAS LAW - Breach of Contract

99.     Plaintiff had valid enforceable contracts with Defendant as academic enrollees and also as residents living in on-campus housing.

100.     Defendant breached this contract in failing to adequately warn Plaintiff of the dangerous sexual assault conditions on campus that has been allowed to metastasize in light of the failed reporting, cover up, and non-existent investigation procedures and student support activities.

101.     Defendant also breached this contract by failing to provide an adequately safe living and educational environment for Plaintiff.

102.     As a result of these breaches of contract, Plaintiff suffered damages which were foreseeable, and for which recovery is now requested.

### VI.

### <u>REQUEST FOR PERMANENT INJUNCTION</u>

103.     Plaintiff seeks a mandatory injunction ordering the Defendant to refrain from unlawful discrimination and/or retaliation, ordering Defendant to undertake and rectify any and all Title IX violations and/or inequities, ordering Defendant and its athletic department to refrain from creating and condoning a hostile sexual harassment and/or discrimination environment against individuals on the basis of sex by immediately ceasing deliberate

indifference to sexual assaults; and cease interference with the disciplinary process in favor of students who were charged with sexual assault.

## VII.

## ATTORNEYS FEES

104.    Plaintiff requests award of her reasonable and necessary attorneys' fees for this action.  *See, e.g.*, 42 U.S.C. §§ 1983 & 1988.  Plaintiff also requests reasonable and necessary attorneys' fees for her breach of contract claim.

## VIII.

## JURY DEMAND

105.    Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## IX.

## RELIEF REQUESTED

106.    For the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment against Defendant consistent with the relief requested herein, and for any and all relief Plaintiff may show she is entitled including actual damages, compensatory damages, nominal damages, punitive damages, court and litigation costs, expert fees, attorneys' fees, statutory interest and injunctive relief.

Dated this 21st day of August, 2017.

Respectfully submitted,

**BRAZIL & DUNN, L.L.P.**

 _/s/  Chad W. Dunn_
Chad W. Dunn
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
chad@brazilanddunn.com

**DUNNAM & DUNNAM, L.L.P.**
Jim Dunnam
State Bar No. 06258010
Eleeza Johnson
State Bar No.
Andrea Mehta
State Bar No. 24078992
4125 West Waco Drive
Waco, Texas 76710
Telephone: (254) 753-6437
Facsimile: (254) 753-7434
jimdunnam@dunnamlaw.com

ATTORNEYS FOR PLAINTIFFS